Madam Clerk, please call the next case. Bill 14-1468, City of Chicago v. Hardman. Members of the Court, Ms. Hardman, my name is Joe Cooper, I represent the City of Chicago. We're here today asking this Court to reverse the decision of the Circuit Court affirming the latest Workers' Compensation Commission decision. We're going to stand on our brief on TTD and causal connection, but we would like to discuss penalties and attorney's fees that were awarded by the arbitrator and affirmed by the Commission and the Circuit Court. I think if you look at the stip sheet in this matter, I think one thing it frames as far as behavior is concerned is that the City, prior to any of the hearing or up and down where we've gone, the City paid $114,000 in temporary total disability in this matter and tens of thousands of dollars in medical. There were, as you know from the record, there were many, many surgeries. So in that context, I just think that the Commission was wrong, the arbitrator was wrong, as far as whether or not penalties were to be issued. Section 19K penalties especially because when, in this case for instance, the penalties were about $80,000. The imposition of the 19, as the case law states, the imposition of the 19K penalties in Section 16 attorney's fees is discretionary and requires an award of additional compensation under the Act. Your theory on penalties were you were entitled to rely upon the opinion of Dr. Spencer. Correct. I want you to tell us why you were entitled to rely on the opinion. He's a board-certified orthopedist. He has a long practice in orthopedic surgery. He has appeared on many occasions for both sides of the Commission, and he's been around. Well, you had an opinion, but the case law talks about, quote, unquote, reasonable reliance, and I think the essence of the decision is captured by the Commission's finding. They point out that Spencer opined, you're right, the claimant did not need any further treatment without even bothering to review the discogram, which he acknowledged was necessary. But then they go on to find it was though a tunnel, the respondent had tunnel vision allowing him to consider the opinion of a one-time examiner while ignoring the opinions of several treating physicians and even its own examining physician, Dr. Goldberg. That's your doctor, right? It's the first IME doctor. He specifically stated the claimant could not work because of the herniated disc. So your doctor has a different opinion than Spencer. Spencer doesn't look at the discogram, which he acknowledges was necessary in arriving at the opinion, and that's okay to define that it's against the manifest way of the evidence. Yes. I think it does meet the standard. Besides Dr. Spencer, there was Dr. DiDilla, sorry if I'm mispronouncing that, of Mercy Works, who actually treated through most of this period of time as the treating physician, and he released the claimant to return to work on the same day. And I think that the city at that point was relying on a reasonable medical opinion. And when there is conflicting medical opinions, the case law shows that that shows that this question or whatever is in the mix, it's what you're fighting over, and it's not done for any reason of delay or any vexatiousness. And in McMahon, for instance, I cited in my brief, it says reasonable good faith challenge to liability. It does not warrant the imposition of penalties, and I think that's what we have here. I think it's important to look. This is a little bit different case than the average penalties case. The reason the arbitrator, as the part that the justice referred to, the part of the arbitrator's opinion, obviously the arbitrator was irritated in this case, to say the least. What did he base his award on? He states at one point in the decision, it's also clear that the respondent knew that this was an underpayment of TTD. He awarded permanent total disability originally, way back when. This was a 19B hearing, and he didn't even have the authority to enter a permanent total disability award. He had the TTD stop on a date certain, and then went from there on permanent total disability. So in the course up and down with this case, that has to be changed. The permanent disability when it was improperly awarded TTD. As the records show, the arbitrator refused a two-week continuance, so there could be an IME to address some of the issues that Justice Hudson brings up. And then most importantly, and back to his opinion, there were a lot of parts of the body here. And when the different parts got injured, they were treated conservatively, and eventually surgery was performed. Now, the latest before the arbitration hearing dispute was, as I mentioned in my brief, Dr. Lorenz's opinion. He had an opinion in July where he listed what was wrong with the petitioner and what kind of treatment he needed. And then he saw him again in November, exact same letter, exact same wording, but he throws in a lumbar. So the arbitrator didn't fail to mention completely the Dr. Lorenz July record. The overtime issue, that's another issue. As far as average weekly wage is concerned, the arbitrator found both on some union payments that the city made. Can we go back a second to what you said? What did you say about Lorenz? I said Lorenz had a July report and then a November report. And what's the inconsistency there? The inconsistency is treatment of the lumbar spine. What did he say? He said nothing. And then later he said that the lumbar spine was degenerative and he would need surgery. So where's the inconsistency? He didn't rule it out in the first report. He just didn't mention it. That's right. I mean, it weighs on his credibility, admittedly, but again, that's within the commission's purview to weigh that, right? And if there is a problem with the credibility there, then that would even be another reason to support our position on having, you know, Well, but the commission didn't find a problem with the credibility, did they?  This went up to the commission. The commission itself said you can't have a permanent total. But not only that, there's no finding of maximum medical improvement. So there is no maximum medical improvement at this date. Then they go up on the overtime issue. The Sanjay Taylor, Judge Sanjay Taylor, issues a decision and says the overtime is not included. The overtime is not regular. And so what does that do? Now we're actually addressing a computation of an average weekly wage. Because how can penalties be awarded in a situation where you don't even know the average weekly wage? Or you get the average weekly wage wrong. And then when Judge Taylor tells you what to do, at that point, they come back and they change the average weekly wage. Can I slow you down a second? Unless I misread something, you didn't cite a single case in support of the proposition that there was an error in the calculation of the average weekly wage. Nor did you cite a single case to support the proposition that the commission's decision regarding the extent of temporary total disability is against the manifest way of the evidence. You forfeited both issues for failure to cite authority. You forfeited. As far as the T.T.V. is concerned, I believe that the payment of the T.T.V. and the T.T.V. amount is part of this case with the citations to McMahon and the other cases. I'm only brief. Not a single case cited in support of the proposition. Nothing. So, the average weekly wage is computed incorrectly. The court tells them to change the average weekly wage. The average weekly wage is reduced from $1,159.70 to $963.38. But the penalties, which are based upon the average weekly wage, are affirmed. So, it's our position that we can't in any way know what the proper amount of penalties or whatever and how that changes in its course up and down between the circuit court and the commission. The decision, as so has now been, as we sit here, it's been reversed on permanent total disability, maximum medical improvement, overtime, and average weekly wage. After all that, it's our position that the computation, at a minimum, can't be correct. And we would ask that you reverse the circuit court affirming the workers' compensation commission. Can I ask a question? Unless I'm missing something, where's the argument that the calculation was an error as to penalties in this brief? Where will I find it? You want me to look through it? Yeah. Why don't you tell me where it's at? All right. Your penalty and fee discussion starts on page 16 of your brief. All right. I'm sorry, Your Honor. What am I looking for? Your penalty and fee discussion in your brief starts on page 16. Please tell me where you've argued that the calculation itself was an error as opposed to whether it should have been awarded or it shouldn't have. I don't find that there. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. Counsel, may it please the Court, my name is Patricia Hardeman. I represent Mr. Farrell. I'd like to state that Dr. Lorenz's reports, he wrote two reports, the one in July of 2005 and again in December. The report in July of 2005 discusses the treatment of the low back, the problems with the low back, his complaints, and is included in his diagnosis. It was an oversight that the judge didn't, or the doctor did not include, you know, that there was. Well, admittedly, that happened, but as I tried to point out, they're not really inconsistent, are they? It's not inconsistent. The first one didn't have it in there and the second one did. Right. I mean, the positions weren't in opposite. No. And it's discussed in the first report. I mean, the back's in there. The question is what. What about the penalties? He finds a lot of problems with the commission's decision without detailing why he finds problems with it, but what's your take? Well, it was unreasonable for them to rely on Dr. Spencer and to continue to rely on Dr. Spencer's report in denying TTV. Why? First of all, if you're careful reading of Dr. Spencer's report, he finds that there's problems with the low back. In his report, he says that, in his words, obvious pathology at the level of L2-L3, and he recommends that if a discogram is performed, which Dr. Lorenz had ordered in August of 2004, that it should include an examination at the level of L2-L3. It's interesting, in Dr. Spencer's report, he notes the herniated disc of the thoracic region had returned at T4-5, but he fails to note there was also an MRI done same day, same facility, of the lumbar back, and that report shows a herniated disc at L2-3, the very level where Dr. Spencer says that there's obvious pathology. Well, did Spencer review that discogram? The discogram was not conducted until October 6th or 4th. So his opinion didn't include a review of the discogram, did it? It didn't. Even though he had previously found there was pathology in that area? Right, and he also says that that's the probable source of any low back pain. The discogram was done in early October. Dr. Gito did it. I should back up and say, when Dr. Lorenz ordered that report, that examination, that study, he said that if the study showed discordant pain in the lumbar spine, then surgery of the lumbar back would have to be considered. In connection with that? Concordant pain. Who's Dr. Goldberg? Dr. Goldberg is the examining physician for the city. He examined... So he's the employer's physician? He's a doctor, and he just examined the thoracic. And what did he say that bears on this issue? He said that he needed more conservative treatment, physical therapy, and that he should have more diagnostic testing done, because he thought maybe there was a fracture being how the accident... Did he also specifically state that the claimant could not work because of the herniated disc? He did. He absolutely did. And that's their doctor? That's their doctor, yes. So then when Dr. Gito did the discogram, he said, yes, there is concordant pain in the lumbar spine. And Dr. Lorenz said, look, on October 20, 2004, Dr. Lorenz says, look, I'm going to recommend that you either have surgery or we're going to have to do some conservative treatment. And Mr. Farrell wanted to have conservative treatment first. So Dr. Lorenz refers him to Dr. Lipov, who was going to try some pain management. Dr. Lorenz also wanted the petition to lose weight, so the conservative treatment was kind of a nice segue into potential lumbar surgery. So, but the city denied the treatment, the pain management treatment for the low back. So this is why Dr. Lorenz ultimately decided, you know, we're going to have to have, you're going to have to have surgery on it, on the back. We can't have any conservative treatment here. So it was unreliable for the city to continue to rely. It was unreasonable for them to continue to rely on Dr. Spencer's report in light of the fact that there was a lumbar surgery recommendation. And in addition, there was a recommendation for surgery to the shoulder by Dr. Chutick. That initial recommendation came on October 11 of 2004. So if we have two doctors saying there needs to be treatment here, right? Yes. And you have one doctor that said what? Spencer said what? You know, Spencer, there's a lot of things that are a problem with Spencer. Okay, Spencer really, when he's releasing the petitioner to work, it seems like he's releasing him because of the back. He says no more treatment for the low back. He doesn't say anything about treatment to the shoulder, the right shoulder. There had already been a surgery on the right shoulder. And if you read his report carefully, as I have, it shows there's no comment by Dr. Spencer as to whether he needs treatment yes or no for the shoulder. And yet we have the treating physician, Dr. Chutick, saying he needs a repeat surgery on that shoulder. So I don't think that Dr. Spencer even addresses the shoulder in that regard. And so it would have been unreasonable in regard to the shoulder, is your position? Absolutely unreasonable. How about the back? I think the back is wrong because he doesn't review the discogram. He's recommending a discogram, doesn't review it, there's no comments on it. And it had already been done, is that correct? No, it hadn't been done. Pardon? It had been done within a couple weeks after Dr. Spencer's examination. Oh, so when did he give the opinion? Before or after the discogram? He didn't give any opinion on the discogram. He just said he should. Well, did it exist at the time he was making it? He said he should have the discogram. Yes. But he didn't say, have any comment about the results of the discogram, which were positive, because he hadn't reviewed it. But it occurred after he rendered his opinion? Yes. He recommended the discogram. And then he doesn't review it. When did he give his opinion? Before the discogram? He gave his, yes, correct. Okay. Maybe I'm not understanding this. He says there should be a discogram? Yes. And then he renders an opinion. No, he renders his opinion saying that there should be the discogram, but he doesn't comment on the results of the discogram at all. Well, how could he comment if he hadn't done it? He can't, but he should have. I'm sorry. That's where I was trying to go. I mean, he should be, you know, the amazing question from your standpoint then, right? He should just look at, well, I think a discogram ought to be done, and therefore I know what the results are before I render my opinion? Well, I think if you were ordering a study, it seems to me that you can write your report but review the study and submit an addendum to it. I see what you're saying. He says, look, to give, you know, an opinion that's accurate, we should have a discogram to be taken into consideration. But then he gives an opinion without taking it into consideration. He does. Right? So that's, in your opinion, unreasonable. As far as the back goes, he says he can work. Doesn't say anything about the shoulder treatment-wise. And I guess we're left to surmise that he's releasing him for work for the shoulder as well, although that's not clear. So you're arguing that the basis in the back, let's not go to the shoulder, that's a different, not a discogram situation, is it? The shoulder? The shoulder. The shoulder, there's no recommendation of treatment. Thank you. Yes. So the back, you're saying it's unreasonable to come to an opinion without a discogram. Absolutely. Oh, that's more clear. Yes. Thank you. That's about it. Thank you. Any reply? I would just want to mention, as I noted earlier, that there is an extensive reports and records from Mercy Works and Dr. Dodula for these issues. So we would ask that you reverse this to TTD, Puzzle Connection, penalties, and attorney's fees. Thank you. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement, written disposition shall issue, that the court will stand in brief recess.